Next case this morning will be United States v. Woodmore, Early Woodmore. Case number is 2323-7057. Good morning. May it please the court. Mr. Braun, my name is Gail Johnson and I represent Early Woodmore in this direct appeal. I'd like to begin by addressing the judicial bias claim in this case. Of course, we've raised it both under the Due Process Clause of the Fifth Amendment as well as 28 U.S.C. Section 455A and B.1. And this court's precedents, particularly in the Nichols case, make clear that these cases are very fact-driven. It's not surprising that we don't have a precedent on all fours factually because these cases come up in unusual situations where there shouldn't be bias. When you look at the facts here, and I want to be clear, do federal judges, federal trial judges, have the inherent authority to control what goes on in their courtroom? Absolutely. But this is a very different scenario from one where, for example, if a friend or a girlfriend of the defendant was huffing or sighing audibly in front of the jury or if a mother was crying audibly and the court decided, you know, I need to ask them to be removed from the courtroom, that would be something where the judge is responding. The judge knows exactly what happened. There's no sort of need for any kind of fact-finding. But what happened here was really a horse of a different color because we had a prosecutor who made an allegation of criminal conduct by my client's father, allegedly in furtherance of my client's interest in winning the trial. All of this conversation was outside the presence of the jury. Isn't that correct? Yes. And I don't think that detracts from, again, the nature of the bias here because what we have is a judge who accepted those allegations of serious criminal conduct, federal felonies, as gospel. You know, and this is not—Article III judges have many, many powers, but family law is not one of them. Well, he didn't accept them as gospel because he went back and did research to find out what the court record showed as to the custody status. So he didn't just accept them, did he? Well, that is absolutely accurate that he looked up a single court order. But that doesn't tell us anything about whether a grandfather has visitation rights. Well, nobody prosecuted the grandfather. It's not like the court acted on any sort of allegation of criminal conduct. The court was just trying to make a preliminary determination, was it not, as to whether the person who was going to testify actually did have custody of the children. And the court did not question the witness to ask any information from her or the father about any, you know, aspects of a custody order that might involve grandparents' rights or that might have involved visitation. There was zero investigation of that. And that's why we're taking the prosecutor's word for it as gospel. The defendant didn't object to this. That's correct. And we have raised it on plain error review. And, you know, when the federal judge in the courtroom in the middle of my client's trial uses the force and authority of the U.S. Marshals to remove children and take them to a certain place, that's a bias. Took them to the mother. Excuse me? Took them to the mother who was there, upstairs in the witness room. Exactly. But that is an example of this judge stepping outside his appropriate role and suddenly becoming an arbiter of a family law dispute, apparently. Did Woodmore object and say, no, I want my daughter left in the courtroom? Again, there was no objection here. So, I mean, the judge is taking some action here that potentially could be disrupting, and neither side is objecting to it. So this is going to be a real hard sell that shows that, number one, he's prejudiced. Number two, it had any impact at all on the case. Well, I have a couple quick responses to that, and then I'm happy to move on to another issue, Your Honor. But first of all, I think it's tricky to hold a lack of objection against a defendant too strongly in a case where what is very much at issue is the judge's own bias. That puts the defendant between a rock and a hard place. Well, it does. But our law requires you to speak. I mean, the reality is if you think there's a bias, you've got to speak. That's your job as a lawyer. I mean, you've got to do it. And, you know, a judge might say, gosh, I didn't realize I was projecting that. Let me explain what I said and what I imagined. And they can correct the problem. I mean, we really, really require those things to be brought up so people can try to correct them instead of sandbagging it until the case is over and then saying, ah, now that we've lost, we're going to raise a claim. I don't think there's any evidence of sandbagging here. And I don't think there was any benefit to my client in being tried by a biased judge. You know, we've addressed the plain error factors in our brief. I do think this is a structural type error. And as we've discussed under this Court's precedent in Trujillo and Gonzalez Huerta, that sort of ipso facto meets the third prong of plain error review. But, again, I see my time running down, and I'm also happy to move on unless there are other questions on that issue. I have one question. And, of course, we're open to hearing your arguments, counsel. I mean, I hope you're not getting any vibe to the contrary. I mean, my question is, isn't taking your point that these are fact-driven circumstances, doesn't it make it particularly difficult under a clear error standard for you to prevail? I mean, that's what I'm struggling with. Because even if I were to assume that – I could assume two things. One, that what the court did was just – it was some act of incompetence, if you want to use that word, that had no bias associated with it, but it was just something it shouldn't have done out of the pale. Two, that there actually was some implicit bias in it. Either way, for a court to have a fact pattern to let it know that it was approaching the guardrails that should stop it from going forward, there is nothing out there that would have allowed it to know that, right? And so how do you deal with that conundrum for purposes of showing clear or obvious error under the prong to the plain error standard? Well, Your Honor, I think, again, I would focus the court's attention on the fact that the allegation that was being accepted as true was an allegation of serious criminal conduct, but not something that the judge could have observed in the quorum. I mean, you know, again, like a disruptive family member of a litigant. The judge knows that the judge has no authority in family law. I mean, that is clear, right? In my view, that is part of what makes this error plain because, again, the judge inserted himself in a family law matter that wasn't about disruption in the quorum that was happening before him. All right. And, you know, we take these family, I mean, the law is the law. The grandparents have rights. These are very, very serious, very personal issues for people, and they have gravity and grave consequences, including emotional consequences for the children. If I could turn briefly to the instruction regarding the attorney's right to interview witnesses. I am aware, of course, that this court heard oral argument in my client's brother's appeal several months ago, and this issue was addressed in that case as well. We have the U.S. v. John case, which has almost the exact same language, and we upheld it there. Heidi, would we have to overturn John? And, of course, you know one panel cannot overturn another. So are you raising this with the hope of eventually getting en banc review? Your Honor, I do accept that one panel cannot overturn another unless there's some, for example, intervening Supreme Court precedent, which I do not allege here. I think this case is distinguishable from John, but in the alternative, we also preserve it for en banc review. But let me tell you why I think it's distinguishable from the John case, and this is addressed in our reply brief. And it has to do with the party presentation principle, because the issues that Mr. Woodmore has raised about both aspects of this instruction, the right to interview language as well as the specific, very directive instruction from the judge to the jury, that you cannot draw an adverse inference from that interview on the witness's credibility. That invades the province of the jury. And those two issues, respectfully, were not raised in John or addressed by the court in John. So, again, I've addressed this under the rubric of party presentation principle, and it's a little more in-depth in our reply brief, but I do think this case is distinguishable. John involved, you know, kind of the implication of whether there was coaching mid-trial, and the question there is about the propriety of the prosecutor's conduct. We would not be standing here objecting if the judge had instructed the jury, it's perfectly proper for a prosecutor to have a pretrial witness with an interview to know what their testimony is going to be. That's not the instruction. This instruction invaded the province of the jury when the judge told them, you cannot use the existence of those meetings to adversely judge the witness's credibility. You know, respectfully to Judge Heil, that is a— Can it? Can the jury use that? Absolutely. Why? Because, as the other instructions explain, it is 100 percent the juror's province to assess witness credibility. The mere fact of a meeting between a lawyer and a witness, the jury is—it would be permissible for a jury to find that that cuts against the juror's credibility. Yes. Okay. In fact, that's a pretty common examination of witnesses. So, before your testimony today, you met with the U.S. Attorney's Office, is that correct? Yes. And did you discuss this case? Yes. And did he suggest certain—I mean, that's a pretty common line of interrogation that you hear in a great many criminal trials. Correct. In fact, it's a permissible line of interrogation because it is a permissible inference for the jurors to draw, because it is their duty, not ours, to assess witness credibility. So, we would ask this court to reverse and remand for a retrial in front of a different district court judge based on the judicial bias claim. In the alternative, we would ask for a remand under the third issue for resentencing on counts 1 and 2 in the range of 5 to 40 years. And if I may save my remaining time for a little. Thank you. Good morning, Your Honors. Counsel. May it please the Court, I'm James Braun on behalf of the United States. The defendant raises three issues on appeal, none of which warrant reversal of his convictions or sentence. As to the first issue, under the Supreme Court's decision in Lateke, district courts' ordinary efforts at courtroom administration are generally immune from a charge of judicial bias. And that's exactly what we have here. Mid-trial, Judge Heil was confronted with an allegation of witness intimidation in the form of essentially the defendant's father holding a witness's child hostage in the courtroom. Not somewhere else, but in the judge's courtroom. The defendant seems to agree that Judge Heil couldn't have simply done nothing. And what the court did was eminently reasonable and allowed the trial to proceed with minimal disruption. The judge didn't disparage or cast dispersions at the defendant or his father. The court didn't threaten sanctions. The court simply acted to confirm that the mother was the lawful custodian of the child and had the child, the children, returned to the mother. That dealt with the issue. Now, that didn't prevent the grandparents from going to family court on their own and arguing that there was a violation of some visitation agreement. But it dealt with the issue that was before the court. What about the contention or retort that there was some implication of bias in the fact that the court did not ask Mr. Widmore's father anything? I mean, it basically just operated without any sort of input from the person who was holding the child as to whether he had a right to hold the child. Well, the court did ask defense counsel if they knew what was going on. Defense counsel said that he didn't know what the issue was. And so the court, I think, was entitled to take the prosecution's explanation of the situation at face value as an officer of the court. That doesn't mean the court took the actual facts at face value. But the court's goal wasn't necessarily to resolve a family court issue. That would have been stepping outside of the court's lane. What the judge wanted to do was just resolve the issue before it, which was to deal with this allegation that was happening in the courtroom, return the child to the mother so the trial could proceed. Even with the benefit of hindsight, the best the defense can offer are two suggestions. One is to basically halt the trial and hold a hearing, which, again, would have been outside the court's lane, to take evidence, hear testimony, and decide for itself who had lawful custody or whether there was a proper visitation. That would have bogged down the trial, and that would have been arguably impermissible. The other suggestion the defense has is that the court could have referred it to a family court. But that wouldn't have resolved what was happening right there, the allegation that a child was being held hostage in the courtroom. That would have just kicked the can down the road. So in these circumstances, what the court did was reasonable, and it did not exhibit bias. Again, it simply resolved the issue that was before the court. And even if the court found that it did indicate some sort of bias, that would be the appearance of bias, not actual bias. And for it to be a structural error, there has to be actual bias. The appearance of bias under 455A, that requires, actually, the defendant under plain error review to show the third prong, that it affected substantial rights, and the defendant simply cannot do that here. There is no indication that at any other point in the trial the judge exhibited any form of bias. The defendant has pointed to nothing other than this single incident. And as Judge Ebell pointed out, this happened outside the presence of the jury. It also happened at the bench. So it's not like the defendant was hearing what was going on. And so with all of that, the defendant simply cannot meet his burden of establishing that it affected his substantial rights. As to the second issue, of course, we have the John case, and it is directly on point. Because while all cases are factually dissimilar, what the John case did was it said that this almost exact same language was not a misstatement of the law, and it allowed the defense to argue improper coaching. And that directly controls the two arguments that the defendant raises here. Let's address that. Because the actual language, I think, is a bit confusing. But it's our approval of it, so there you go. But, I mean, I don't think it's probably accurate to say that the attorney has a right to interview third-party witnesses. The attorney has a right to ask the witness if they're willing to be interviewed. But the attorney doesn't have that right if the witness doesn't go along with it. I mean, it's only a right to inquire. You don't have a right to do the interview. We couldn't come up to the witness and say, I'm going to interview you whether you like it or not because I have a right to do so. So I think that language is confusing. But it is our language. But my real question is how the John case addressed the effort to impeach the witness by saying, we don't dispute the fact that they had the right to approach you, but you also had the right to say no, and you didn't. And did that show that you are sympathetic with the prosecutor? Did John address that? And how did John say that was a right that could be used or not in impeachment? I don't believe it did. And that's also not what the argument is here. The defendant never at trial tried to argue that I wanted to talk to the witnesses. They refused. And that shows pro-prosecution bias. This instruction wouldn't have prevented that either. But the argument here – The court made some limitations on its ruling here in this case. The court said, this isn't going to prevent you from doing certain things. What could the attorney for the defense have argued here? They could have argued improper coaching, which is, I think, what their intent was when they were arguing. Did they argue that? I don't believe they actually argued that in closing, that they actually went that far to argue that these witnesses met with the – My question is, did the court say you could argue if you believe that there was coaching by the U.S. attorney's office in these interviews, or that that's off limits? Or was that not even addressed? I don't think it was addressed. The district court certainly didn't say you can't argue that. I don't think it said you can argue that. But from John, it's clear they could have. If the defendant is not precluded from that, the defendant could have said, look, we know that there was the right to approach this witness and interview them. But we – I mean, I got the feeling in the briefs that that was their complaint, that we wanted to show the jury that these witnesses were compliant and being willing to be interviewed by the U.S. attorney's office. And that shows they had a sympathy for that side. I thought that was what they wanted to argue, and the court said no. I think that is why they argued it was an incorrect statement of the law. But the district judge never said you can't argue that. The district judge never said this instruction precludes you from arguing that. And as the John court said as a matter of law, that language does not preclude the defense from arguing. The court gave no restriction on what could be argued. This is not a fight at all about the court saying you can't question this or that. It simply is a fight about this is an instruction we're giving the jury, and you don't like it, and we think John authorized it. Right, right. And it was really – I'm sorry. That's the only issue on this matter. My understanding is what the defendant is arguing is that this is an incorrect statement of the law and that it precluded the defense from arguing improper coaching. And under John, the instruction did neither. It did not misstate the law. It did not prevent the defense from arguing improper coaching. The defendant never articulated that to the district court. The defendant's brother did articulate an argument that this was an incorrect statement of the law. Defendant Early Woodmore did not. He said this is not an incorrect statement of the law. But Woodmore can't take credit for what the other guy argued.  No. But I also think it's helpful to take a step back, because the defendant's argument really misapprehends the purpose of this instruction. The instruction was not to educate the jurors on the law of witness interviews. It was simply to let the jurors know that there's – that an attorney has the right to prep their witnesses, and there's nothing inherently improper in and of itself with a lawyer doing so, with a lawyer interviewing. Were all government witnesses that this issue arose in context of, or were some of these defense witnesses? It was all government witnesses. It was the defense who would cross-examine the government witnesses about meetings with the prosecutors implying improper coaching. To the point of there being nothing inherently wrong with it, what I understood opposing counsel to say today is that I think this relates to the second sentence of the instruction, that essentially it took away – it invaded the province of the jury by suggesting that the mere act of talking to a witness, that the jury could not infer any sort of impropriety from that. That's what I understood. Is – would that invade the province of the jury? That struck me – well, I did – I was not aware that that would be the case, so I'm asking for your opinion. If my question is not clear, let me back up and say, the question is, the notion that you cannot infer anything improper from the mere act of an attorney talking to a witness, is it – would that invade the province of the jury in making its determinations about witness credibility? It would not, because as a matter of law, an attorney does have the right to interview their witnesses, to prepare their witnesses for trial. And in fact – An attorney has that right, but wouldn't the defense and the jury also have the right to say, yes, attorney, you have the right to do that, but we believe that when the witness complies and is willing to be interviewed by you, it shows a complicity or a cooperation that is impeachable. And I don't think those are mutually exclusive. The fact of the meeting itself does not – and if you look at the instruction that was given in John, what it says is, the fact that a witness has talked to an attorney does not reflect adversely on the truth of such testimony. The instruction that was given here was less restrictive, actually. It said, the fact that a witness has talked to an attorney and told the attorney what he or she would testify to does not by itself reflect adversely on the truth of the testimony of the witness. So the instruction given here allowed even more wiggle room for the defense to argue that, yeah, they can meet, but you can also infer that when they met, the prosecutor told the witness what to say, or it shows that the witness is biased for the prosecution because the witness would agree to meet with the prosecutor. It doesn't preclude that argument. It just is telling the jury as a matter of law, which is what the law is, as the Court said in John, that the fact that a witness has talked to an attorney does not reflect adversely on the truth of such testimony. And does the truth of such testimony also include the credibility of such testimony? It would, yes. But you also have to read the instructions as a whole. And as a whole, the very first instruction, and there's a slew of instructions on how the jurors were to assess witness credibility. And the first one says clearly, you are the sole judges of the credibility or believability of each witness and the weight to be given to the witness's testimony. But you aren't going to be able to hear any argument that this witness is not credible because the witness voluntarily agreed to have a prep session with this attorney. We obviously can't say what happened during that prep meeting because, voila, we weren't invited to attend. But you can imagine what might have been said. I mean, I think I am troubled by that. That's the argument that gives me concern in this case. Well, and I think the law provides that because it's important for attorneys to be prepared and to know what the witnesses are going to say if possible. And the government in its brief cited to the Seventh Circuit pattern instruction, which reads a little different than the one given here and that came from a model instructions. But it says it is proper for an attorney to interview any witness in preparation for trial. That's Seventh Circuit pattern instruction 3.02. And the committee comment, and that's cited in the government's brief, but the committee comment cites to a Seventh Circuit case, United States v. Torres, 809 F. 2nd, 429, Seventh Circuit, 1987. And what the court said in that case is that it's proper for an attorney to interview any witness in preparation for trial. And then it goes on to say, and an attorney who does not question, rehearse, and prepare his witnesses before trial is not properly prepared for trial. So given that statement of the law, to properly prepare for trial, you need to talk to your witnesses. The law wants to encourage attorneys to talk to witnesses. And the jurors need to know there's nothing inherently improper in that process. Now, if you, and the defense asked the witnesses, you know, whether they met with the prosecutor. I see I'm out of time. If I could finish my thought. And the defense could have asked the witnesses, what did you talk about? What did the prosecutor say to you? And there are certainly cases where that happens. And then the prosecutor on redirect will say, what did I tell you? You told me to tell the truth. But those questions can be asked of the witness. And they can argue, the defense can argue then that there was improper coaching. And so the instruction does not preclude that. It just says there's nothing inherently improper in an attorney meeting with a witness. Thank you, counsel. So the instruction didn't say there's nothing inherently improper with an attorney meeting with a witness. What the instruction said is, jurors, you cannot make an adverse inference from the fact of that meeting. That language isn't in the instruction. Yes, it is. Well, read it to me then. I've forgotten it. The district court instructed jurors that such a meeting, quote, does not by itself reflect adversely on the credibility of witness testimony. I'm sorry, there's an end quote in there. So that is the second part. It is a two-pronged objection to the word right and to that section. And again, I think I said earlier in my original remarks, there would be no concern here if the instruction said, hey, it's perfectly proper for lawyers to do this. So I really think there's a danger here that we're conflating the propriety of the prosecutor's conduct with the issue of witness credibility. These two things can be true at the same time. The federal prosecutors are acting perfectly properly in preparing their case for trial. At the same time, it is the exclusive province of the jury under U.S. v. Daisy, 403 F. 3rd, 1147 from this court, 2005. Exclusive province of the jury to assess witness credibility. Well, the language of the instruction, and I'm looking at it now, says reflect adversely on the truth of the testimony of the witness. Now, nothing precluded the defense lawyer from arguing that whether they were true or not, they were a pro-prosecution witness because they interviewed with the government. Nothing precluded the defendant from arguing that, from which an inference could be made that they're not entirely credible. So there's no inconsistency between those two things necessarily. Well, I think talking about the truth and credibility are two different ways of saying the same thing. Could be, could not be. I mean, one goes to the accuracy. I said that the car was red. Well, the car is red. My motivation for saying the car is red, my friendliness to the government in saying the car is red, goes towards credibility, right? Right, but what we are concerned about with credibility, and in this context would be a pro-prosecution bias, where is that going? It's going to the truth of the testimony or lack thereof. Or could be. But the point I'm making is credibility in and of itself does not have to be inconsistent with me telling the truth. I mean, I could tell the truth and say the car is red, but my motivation, my desire to say the car is red could be because I love the government and want to testify for them. Is that not the case? That is the case, and it is entirely up to the jury to decide whether they want to draw that inference or not. The jury was able to hear an argument about that, but it did not choose. The defendant didn't make an argument to that effect. But I don't think this is about arguments. This is about the court's instruction. I mean, whether or not the defendant argues anything, if the court's instruction is a misstatement of the law and invades the province of the jury, that is error. That is error, but my point is that if the word is truth and not credibility, there is no necessary implication that a defendant is not telling the truth. The defendant could be incredible in the sense that he is biased in favor of the government and still say the car is red. And if that is true, then this instruction would not preclude the jury from making an adverse credibility inference as it relates to that witness because he testified for the government. There would be no necessary reason why the jury could not do that. This instruction was erroneous because it precluded jurors from inferring a pro-prosecution bias that in the court's example would have caused the witnesses to say the car was red when the car was blue. That is up to the jury to decide, and this instruction precluded that. So, again, we ask the court to reverse. Thank you. Thank you. Thank you. The case is submitted.